The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. Thank you. Good afternoon. We'll next call 4-23-0533 Gregory Hertz versus the Illinois Human Rights Commission et al. Counsel for the appellant, please state your name for the record. Brian Lee from Sorley Northrop. Thank you. And for the appellee? Assistant Attorney General Caleb Rush for the Illinois Human Rights Commission and the Illinois National Guard. Thank you. Mr. Lee, you may proceed. Thank you. Good afternoon, Justices. May it please the court, counsel. Simply put, this is a case where the petitioner, Major Hertz, was terminated from his position with the Illinois National Guard because he was serving in the United States Armed Forces with the National Guard Bureau in Virginia. The Illinois Human Rights Act prohibits such discrimination. Unfortunately, the Illinois Human Rights Commission erred in holding that it does not have jurisdiction over Major Hertz's claim. Nothing in USERRA and nothing in the statutes relied upon by the administrative law judge mandate a finding that the commission does not have jurisdiction over a human rights claim against the Illinois National Guard. The commission also erred in holding that Major Hertz's claim is not justiciable. This court should reverse and remand this matter to the Illinois Human Rights Commission for further proceedings. Now, given the bases on which the ALJ and the commission dispensed with Major Hertz's claim, not too many of the facts are necessarily relevant, but I'll go through a few just to kind of set the table for how we got here. Major Hertz was hired by the Illinois National Guard as a dual-status technician in December of 2006. In June of 2016, he asked to go serve with the National Guard Bureau in Virginia, and the following month, that request is granted by the Adjutant General. In September of 2017, Major Hertz requests for an extension of his active duty with the National Guard Bureau in Virginia. That request is also granted, extending his time beginning in October 17. It's supposed to last for a year. In March of 2018, Major Hertz is informed that he has until June of 2018 to return to his technician position or face termination. Major Hertz makes two attempts to curtail his service with the National Guard Bureau, but those attempts were unsuccessful. Major Hertz is unable to report back to the Guard in June of 2018. He is subsequently terminated. Major Hertz then files a charge of discrimination in October of 2018 and later a complaint of a civil rights violation in January of 2020. The case proceeds before the ALJ. And then in September of 2022, the ALJ, when faced with cross motions for summary decision, finds in favor of the Guard. Number one, finds that there's no jurisdiction. Commission doesn't have jurisdiction over Major Hertz's claim. And alternatively holds that even if there was jurisdiction, the claim, Major Hertz's claim is not justiciable. And in May of 2023, the commission adopts the ALJ's recommended decision, and that's how we ended up in this court. So as I mentioned at the outset, the commission erred in both respects. The commission erred in deciding that there's no jurisdiction for Major Hertz's claim. The commission also erred in finding that Major Hertz's claim is not justiciable. I'll deal with the jurisdictional argument first. Let me be very clear. Major Hertz's claim is nothing more than a claim under the Illinois Human Rights Act. It is a claim based on discrimination, based on military status. It is not a claim based on USERRA. Now, I will admit, I do think Major Hertz has a viable USERRA claim, and I won't disagree that aspects of that claim found their way into some of the filings that were submitted to the ALJ. But this is an Illinois Human Rights Act claim. It's the type of claim that the commission has jurisdiction over. It's the type of claim that the commission set up to address. Now, in finding that there was no jurisdiction, the ALJ relies on three separate Illinois state statutory provisions. Number one, it relies on Section 30.5 of the Illinois National Guard Employment Rights Law. Number two, Section 4 of the Military Code of Illinois. And number three, Section 29 of the Military Code of Illinois. However, none of these statutory provisions are actually in conflict with what the Human Rights Law provides. I'll start with Section 30.5 of the Employment Rights Law because I think that's the provision that the ALJ primarily relied on. Section 30.5 of the Employment Rights Law is nothing more than a policy statement that kind of explains the other provisions of that statute. Section 30.5 merely notes that USERRA has been enacted, that it's in place to provide certain protections, that its protections don't extend to everybody, that they don't extend to people in the Illinois National Guard serving in a state active duty status. And so that's why other provisions of the Employment Rights Law were enacted to kind of fill in the gaps, as the state saw it, because USERRA didn't provide the protections. We need to enact something that provides those protections for those additional employees of the Guard. Nothing in Section 30.5 of the Employment Rights Law dictates that USERRA is the sole source of employment rights for those employees serving in the armed forces. Now, with respect to Sections 4 and 29 of the Military Code of Illinois, they're similar in a way, at least with respect to how the ALJ relied upon them. Section 4, in essence, basically says that the intent of the Military Code of Illinois and other statutes affecting the Guard have to conform with federal statutes, federal regulations, can't be inconsistent with those. Similarly, Section 29 of the Military Code of Illinois says that the Illinois National Guard is to be organized and governed in conformity with federal rules, regulations, and statutes. Now, the ALJ looked at these statutes and decided there was a conflict here and that because there was a conflict, he had to apply these specific statutes to deal with the military as opposed to a general statute like the Human Rights Act. The problem with that is that there is no conflict. The ALJ's finding that there's no room legislatively for the Human Rights Act to grant additional rights to Major Herbst as an employee of the Illinois National Guard is simply erroneous. And the reason we know that is because USERRA itself, along with one of the regulations that implements it, specifically provides that USERRA shall not supersede, nullify, or diminish any state law that provides rights in addition to those provided under USERRA. There's another regulation section that puts it another way. It basically says USERRA is a floor, not a ceiling when it comes to employment rights. Just like the federal constitution is a floor that the Illinois constitution is free to build on and provide additional rights for its citizens. USERRA provides for that, and Illinois has done that by enacting the Illinois Human Rights Act to provide employees, even employees with a military employer, to be free from discrimination based on military status. We've cited several cases in our filings with this court of case law where the courts have been very clear that state law causes of action, statutory causes of action that the states have allowed, if those aren't in conflict with USERRA, they're proper causes of action. There's jurisdiction there because USERRA specifically provides the states to do what Illinois has done here, which is pass legislation to give people even more rights than what USERRA gives them. I know that the respondents have tried to distinguish these cases, but there's nothing in those cases that indicate that those cases would have been decided any differently had the employers been of a military nature. It's simply the fact that because USERRA authorizes additional legislation by the states to provide additional rights, there is no conflict between, not only is there no conflict between the Illinois Human Rights Act and USERRA, because there's no conflict there, there is no conflict between the Illinois Human Rights Act and these other statutes, the Military Code of Illinois and the Employment Rights Law, because again, all they're saying is do it in conformity with federal law. Well, we're doing it in conformity with federal law because we're doing what USERRA explicitly authorizes us to do so. So for that reason, there is jurisdiction. I have a question. Can you describe for us some of the specific rights benefits under USERRA that petitioner might be entitled to? So under USERRA, the federal statute provides that an employee like Major Hertz has the ability to be gone from his job to serve in the military for a cumulative total of five years and then gives that employee the opportunity to then come back, be reemployed, be reinstated as long as you come back within a certain time frame. And it's usually, it depends on the length of service, but it's a certain time frame after your five years cumulative total of service runs. And so here for the USERRA claim, you would have to say that they terminated me or didn't let me come back before my five years was up. There are certain time frames that are exempted from how you calculate the five years total. And here, I think if there was a USERRA claim, it would be based on one of those exemptions, but it's kind of a hard, fast five years you get to go serve in the military and still have rights to come back to your job. So just following, and I'm probably getting ahead of where you want to be, but following up on that, what additional rights does the Illinois Human Rights Act provide in addition to  So I believe that the Human Rights Act, as it's worded, gives Major Hertz an additional protection in the sense that even after his five years runs under USERRA, the Illinois Human Rights Act still prevents his employer from terminating him based on his military status. So that is the additional protection. Again, it's something that USERRA explicitly allows the states to do. Illinois has done so here. And that's just via discrimination action or is there some specific language you can point to? So the Illinois Human Rights Act, of course, prevents discrimination in many forms. It prohibits claims based on race discrimination, age discrimination, sex discrimination. And one of those statuses, protected statuses, is someone who is serving in the military. And that, of course, is the basis for Major Hertz's claim here. Because the Illinois Human Rights Act prohibits discrimination based on military status, let's put a timeframe on it. Just says you can't discriminate based on military status. That's the additional protection that Major Hertz has here. It's the reason the commission has jurisdiction over his claim. And, Counsel, just to confirm, there's no dispute that his service was in excess of the five years. Is that correct? I think there's a dispute. And, again, this is not something that the commission would be asked to weigh in on because it would be a USERRA claim. But I do think that the Illinois National Guard improperly included some time that he was serving in determining it a discrimination. I don't think the Illinois National Guard should have been more than five years. I think the time that he served after he made the efforts to curtail with the National Guard Bureau, I think under USERRA, that time should be excluded. Certainly the Illinois National Guard didn't agree with that and did find that he had been gone for five years that could be counted under USERRA. But I would disagree that he actually went past the five-year USERRA threshold. Again, not an issue that I think the commission is set to resolve. I do think that's outside its scope. With regards to the Illinois Human Rights claim that you've made, then based on your responses to Justice Kavanaugh, there really would be no time limit whatsoever to any reemployment claims. Correct? I think that's correct. And I think if the Illinois Human Rights Act was inclined to put a time limit on it, we would have statutory language to that effect. So we're really implying that versus having a specific timeframe set forth in the statute. This court would be, if you will, superimposing that into the statute. I don't know. I would disagree with the word superimposing, Justice Lannard. I just think that it's like anything else. Any type of discrimination claim based on age, based on sex, based on religion, there's no timeframe component to that. It's just you can't discriminate based on military status yesterday, you can't do it today, you can't do it tomorrow, you can't do it two years from now. I don't think that's something novel that this court would be applying here. I think that's kind of baked into the structure that's been put in place through the Illinois Human Rights Act. Thank you. As I noted early on, the ALJ had a second alternative basis for ruling against major hurts, and that was this issue of justiciability, or more specifically a lack thereof. I would note at the outset, I think it's important for this court to note that all of the cases on which the ALJ and the respondents in this case rely on this justiciability argument are federal cases that are not binding on this court. They deal with things like 1983 actions. They deal with things like Bivens claims. They deal with claims under the Federal Tort Claims Act. There hasn't been a single case cited by the respondents in its brief to this court that's a case from Illinois that says that Illinois Human Rights Act claims can't be decided by the commission if the employer is military in nature. Counsel, you're correct in your assessment of that. These cases aren't binding, but they do constitute persuasive authority, and they sound pretty persuasive to me. Why shouldn't we follow them? I think a couple reasons. Number one is that we've got Illinois case law that we've cited in our briefs that have already held that the military is both subject to monetary damages. That was the Hoodless case that dealt with the destruction of the building. We've also cited the Juice case, which has already held, this is an Illinois court, finding that injunctive relief against the military is appropriate. That was the case where the particular use of the rifle range was enjoyed so as not to disturb the neighbors. And I think a quote from the Juice case is particularly relevant here, and in that case the court said this, when the officers of the National Guard exceed their authority and by wrongful act injure another, they should be and are answerable to the injured party in the courts. Major Hertz is claiming that he was discriminated against by his employer based on a protected characteristic, his military service. The Illinois Human Rights Act allows the commission, gives them the authority to order any employer to pay actual damages or reinstate the former employee. Nothing in the Illinois Human Rights Act prevents the commission from exercising that authority when the employer is military in nature. And secondly, and I'll admit, this is not your run-of-the-mill Human Rights Act claim. I don't know that I've ever seen another one that's actually based on military status in my practice. Again, they're mostly their race claims, their sex claims, their national origin or religion claims. But if the court decides that Major Hertz's claim is not justiciable, then I think it necessarily follows that you're finding that age discrimination, sex discrimination, all of those claims are also out against someone like the Illinois National Guard. And again, there's nothing in the Illinois Human Rights Act that suggests that that was the scheme that was set up. And it also begs the question as to what remedies someone like Major Hertz or anyone who wants to bring a discrimination claim against the Illinois National Guard has, if they can't rely on the specific state statute that's been enacted to combat unlawful discrimination. I would note one factual issue that I do want to take note of, a dispute is, because I think it pertains to Major Hertz's claim for injunctive relief against the National Guard with respect to reinstatement. There was a finding by the ALJ that Major Hertz's absence from the Illinois National Guard somehow impeded their goals, prevented them from doing what they were setting out to do. And I just don't think that the factual record supports that. I think that factual findings against the manifest weight of the evidence, because the only thing it's based on is this recitation of the things that Major Hertz would have done had he come back. He would have worked on getting trainings together. He would have looked for funding. He would have done evaluations of those trainings, but there's no evidence below. There's nothing in the record that suggests that the Illinois National Guard was in any way prevented from doing those things in his absence. No evidence in the record that they were impeded in their ability to carry out those tasks or carry out their purpose in any other way. And so I do think that that's relevant in looking at whether Major Hertz has a claim for injunctive relief against the National Guard in this case. To sum up, two findings by the ALJ which are erroneous here, and the commission adopted those erroneous conclusions. Number one is that there's no jurisdiction over Major Hertz's claims. There is jurisdiction. There's no conflict between the Human Rights Act and any of these other federal or state statutes. Number two, this claim is justiciable. It's set up through the Illinois Human Rights Act, which is what's designed to deal with discrimination claims in this state. There is no language in that statute exempting military employers from the requirements that they abstain from certain kinds of discrimination. For those reasons, this court should reverse and remand this matter to the commission for further proceedings. Unless the justices have any questions, that's all I have today. And I thank you for your time. Okay, I'm seeing no questions. Mr. Rush, you may proceed. Thank you, Your Honor. May it please the court. Again, I'm Assistant Attorney General Caleb Rush, appearing for the respondents. That's the Illinois Human Rights Commission and the Illinois National Guard. Hertz knew that the USERRA five-year limit on employment restoration rights applied to him. He confirmed this multiple times with his superiors at the National Guard. The National Guard allowed his second voluntary leave in a row, approved that leave based on Hertz's assurance that he would abide by the five-year limit and return to his post before he reached more than five years absence. Then after that time period elapsed without Hertz returning to his post, the Guard gave him an extra 90 days. He still did not return to his post. Instead, Hertz filed a discrimination complaint, not under USERRA, but under the Illinois Human Rights Act. For two independently sufficient reasons, the commission's decision to dismiss this complaint should be affirmed. First, the commission lacked jurisdiction because Illinois and federal military statutes take precedence over the Human Rights Act in this narrow circumstance.  damages and injunctive relief are not available to military personnel suing their superiors over personnel decisions affecting military discipline and  I would like to start with jurisdiction unless the court has another preference. There is a fundamental conflict between the Illinois Military Code and the claim by Hertz here that the Illinois Human Rights Act gives him unlimited employment restoration rights beyond the five years provided in USERRA. And by the way, I want to mention, counsel said that there's a dispute as to whether the five year limit was reached. That doesn't appear anywhere in the briefs. The Illinois Military Code says that the National Guard shall be governed in conformance with federal standards, statute, regulations, rules, all federal standards. Well, what do the federal standards say? The federal standards say that National Guard superiors can terminate employment after the five year limit has expired. That's what they did here. Hertz's position would put the Illinois National Guard on a different footing from the federal National Guard standards. Hertz's position would constrain the Illinois National Guard's employment decisions when someone has been absent from their post accumulating beyond five years. So that's a conflict between the Illinois Military Code, which again, in two different places, says that the National Guard shall be governed in conformance with federal military standards. Why does the Military Code say that? It says that because of the extremely high priority of military discipline and readiness. And Hertz's position removes authority from National Guard command to make decisions in order to keep posts filled. We have an analogy from council about constitutional provisions setting a floor and allowing greater protection under state law. There's two problems with that. One problem is with respect to some rights under the Illinois Constitution, and by the way, this is an argument that's not in the briefs, but I would like to respond to it. With regard to certain rights in the Illinois Constitution, Illinois courts have determined that they shall be applied in lockstep, in lockstep with federal interpretation of those constitutional rights. That is what the Illinois legislature has said here. The Illinois National Guard shall be governed in conformance with federal standards. The second problem with Hertz's argument about the Human Rights Act creating additional rights is something that I believe justices identified, which is the Human Rights Act does not explicitly say that there shall be unlimited infinite restoration rights. The Human Rights Act says there shall not be military status discrimination. USERRA also says there shall not be military status discrimination, and USERRA says there's a five-year limit on employment restoration rights. Nobody has ever claimed that the generic prohibition against military status discrimination contained in USERRA creates an unlimited employment restoration right. There is an open question as to whether in some cases, perhaps the generic prohibition against military status discrimination in the Illinois Human Rights Act might perhaps create employment restoration rights beyond five years. That is a broad question that this court does not need to address here. No Illinois court has yet addressed that question of whether the general prohibition on military status discrimination contained in the Illinois Human Rights Act, whether that general prohibition creates employment restoration rights of any duration. It's not necessary for this court to dispose of that question here because instead this court can affirm the commission's decision, excuse me, on the much narrower basis that when it comes to somebody employed by the National Guard, where the Illinois legislature has said the National Guard shall be governed in conformity with federal standards, it's clear in this circumstance that either the Human Rights Act creates no additional rights, or if it purported to then it conflicts with federal law and federal law must, and I'm sorry, then it conflicts with the Illinois military code and the Illinois military code must take precedence. Excuse me. I also want to touch on the National Guard employment rights law. Counsel said there's nothing more than a policy statement. The statute tells the court more than that. The National Guard employment rights law reflects the legislature's understanding of the state of the law. It says reemployment rights are created by USERRA. It doesn't suggest at all that reemployment rights are created by the Human Rights Act. In fact, if they were then the necessity for these provisions in the National Guard employment rights law to protect National Guard members who with certain types of duty would not be covered by USERRA, that necessity would not exist. So it's certainly more than a policy statement. Finally, on this topic of jurisdiction, counsel points to the cases addressed in the briefs, allowing certain state law claims that are not preempted by USERRA. Nothing about our argument is that a state law claim under the Human Rights Act is preempted by USERRA. We are not discussing federal preemption law here. What we are discussing is a conflict between two Illinois statutes. Number one, the Illinois military code, which very clearly says that the National Guard shall be governed in conformity with all federal standards, all federal standards, including the standards that allow National Guard commanders to terminate employment after more than five years absence. The conflict, then the conflict on the other hand, is with the claim not established by case law, but the arguable claim that the generic prohibition on discrimination in the Human Rights Act creates these unlimited employment restoration rights. None of the cases that we address this in our briefs, excuse me, in our brief, but just to remind the court, none of those cases cited by hers involve a state law that said that the National Guard would be governed in conformity with federal law. One reason perhaps why none of those cases involve that is that none of those cases involved a military employer. We've got Goya Foods, for example, in Puerto Rico. Moving on to the argument about availability of money and adjunctive remedies. This case is very much parallel to the Knudsen case involving the Wisconsin National Guard. This case is also in line with many years of precedent, like the Chappelle case from the United States Supreme Court. And what the courts have uniformly said is that when military personnel go into civil courts to sue their superiors for damages and injunctive relief on claims that relate to military discipline and readiness, that those claims are not justiciable. Yes, there are remedies available. There's the Uniform Code of Military Justice. And courts have entertained some claims if they did not involve military discipline and readiness. Now, for the first time in oral argument, counsel wants to dispute the administrative law judge's finding that hurts his claim when the National Guard wanted him to return to his post to lead efforts on disaster preparedness, pandemic preparedness, cyber attack preparedness. For the first time in oral argument, counsel wants to dispute that finding based on the manifest weight of the evidence standard. Well, counsel, isn't that finding also the finding of the commission? Yes, it is. And we're really just concerned about the commission's findings here. That's right. And the commission adopted, the commission in effect adopted the findings of the administrative law judge. So thank you, Your Honor. The important decision here is the commission's decision. At any rate, there was evidence, undisputed evidence in front of the commissioner about the National Guard's need to fill this post and why it wanted Hertz to fill this post. And it's too late now on oral argument without any comment in the briefs to dispute that finding. And by the way, it was prescient on the part of the National Guard in 2018 to want someone leading pandemic preparedness. It's very difficult to say that that's not important for military discipline and readiness to have the National Guard on top of that issue. So the only, the only difference here is the legal basis cited for the claim because we haven't had case law about claims based on the Illinois Human Services Claims addressed in the federal case law. That difference does not matter. As the Knutson case says, when it's addressing section 1983 claims versus Bivens claims, the impact on military discipline and military readiness is the same. Hertz has made no attempt to address these principles or to explain why they don't apply here. This is certainly not a case about a private neighboring landlord, a hundred years ago, dealing with a firing range next to him, or again, a private property owner dealing with a military officer, I think an army officer, 150 years ago who should not have destroyed a civilian building. We're talking about principles of military readiness, military discipline, and there there's no principle. There's no principled basis for denying, I'm sorry, for allowing this type of claim to proceed in a civil court. Now, just as a final note, we did have the argument from counsel here for the first time today, an oral argument not raised in any of the briefs. What about other types of discrimination claims? Well, there's a few important things to note. Courts have sometimes considered other rights raised by military personnel in civil courts. The principles, the types of distinctions, sometimes fine distinctions perhaps involved are discussed in Chappelle, in Knutson, in the other federal cases decided and discussed in the briefing. None of these cases hold that, you know, like Knutson recognized, that when a claim for damages or injunctive relief threatens military decision-making relating to discipline and readiness, that claim does not belong in a civil court. And by the way, the types of other general discrimination claims, race discrimination, sex discrimination, et cetera, they don't involve the very novel claim here of an unlimited more than five year right to restoration of a job. So there's a lot of reasons why a decision today in this case does not need to address, you know, broader questions explained in cases like Knutson about how sometimes a civil remedy may be available to a military service member in court. This is not that case. If the court has no further questions, we will rest on our brief and we ask this court to affirm the decision of the Illinois Human Rights Commission. Okay. Thank you, counsel. Don't believe there's any questions. Mr. Lee. Thank you, Justice Kavanaugh. Just briefly, I would note that, again, there is no conflict between the Illinois Human Rights Act and USERRA. USERRA provides a protection for the first five years that's countable while an employee is off serving the military. It doesn't contain any language indicating that termination is required once that five years runs. Again, it's a protection up to a certain point. And then there is language providing that states can tack on and give more protection. And that's what Illinois has chosen to do here through the Illinois Human Rights Act. With respect to and without a conflict, I know counsel tried to distinguish the cases we've cited because it doesn't deal with these specific state statutes and their language. But given the way those state statutes are worded, if there's no conflict between the Human Rights Act and USERRA, then you're not running afoul of these other state statutes that just say you have to do it in conformity with federal law. Because if you look to federal law, federal law authorizes the other statute that you're saying is in conflict. There is no conflict. And so there is no lack of jurisdiction. With respect to the Knutson case that was relied upon by counsel for the respondents here, again, I would note, not only is that a 1983 action case, it's also a case that was based on a claim based on a lack of due process. Here, we don't have a lack of due process claim. Here is the claim, pure and simple. The Illinois Human Rights Act prohibits discrimination in many different forms. Major Hertz is claiming that he was discriminated against based on his military status. That is a claim that this court should find is justiciable under the commission. Now, I know counsel pointed out a lot of things that were or were not in my brief. I'll note that he spent very little time addressing the argument about additional remedies or what the avenue, the additional remedies would be for someone like Major Hertz. Of course, that wasn't discussed in their brief either, but I do think it's something for this court to take note of in determining whether these claims are justiciable. Again, the commission erred in adopting the ALJ's findings of number one, the commission lacked jurisdiction over this claim. Number two, that this claim was not justiciable. We request that this court reverse and remand this case to the commission for further proceedings. Again, I'll be happy to answer any questions and thank you for your time. No questions, I believe. Thank you, counsel. Thank you both. We'll take the matter under advisement and we now stand in recess.